Good morning, your honors. I may have pleased the court, Timothy Murphy, Federal Public Defender's Office for Mr. Grant this morning. Your honors, my client pleaded guilty to possession with intent to distribute controlled substance. He was held responsible for almost 59 grams of crack cocaine. The parties agreed that if they removed the crack powder disparity in the guidelines, his range would be between 27 and 33 months. The government made its recommendation under 3553A to the court that it consider this issue of disparity. The court agreed to do that, ultimately sentencing my client to 48 months, which was beneath the accepted guideline range of 70 to 87 months. The parties said all the right things in court. The government, I think four times in the record, made this recommendation under 3553A. The district court, you'll find at page 88 of the record, indicates that it was not going to recalculate but would consider the disparity issue under the metaphoric basket of considerations, if you will. The 70 to 87 month range was not based on reliable data and the national experience as we would normally expect in the guidelines. In fact, it was based on a recommendation for an amount of prison time that was far greater than necessary to reach the goals of sentencing. Counsel, may I ask you about the appeal waiver? Yes, Your Honor. So, I suppose one way to ask it is this. Let's assume all of the same facts of this case, including the district court, saying I am accounting for the disparity, and then your client gets a sentence of 34 months. May I? 48, I'm sorry, Judge. 48 months. No. Oh, I'm sorry, you're not. In my hypothesis. I didn't mean to interrupt. I'm changing one fact. And the fact is not 48 months, but 34 months. Is the appeal waiver enforceable? It would not be, Your Honor. I mean, for two reasons. The first that we pointed out in the brief, there was no affirmative understanding expressed by my client, and I'd like to give some context to what that means. There are two points in the plea elocution where the court discusses the appeal waiver. The first you'll find in pages 30 through 32, I count approximately 21 different criminal procedure rights that the court goes through. Number 19 is the appeal waiver issue. You do not see, in this part of the plea elocution, any interruptions by the court saying, do you understand this, do you understand this, do you understand this. The way it reads, if you read the transcript and eyeball it, it looks like the court is maybe pausing between these different issues. The way that this comes out, though, in court, in real life, is that it's just one long, complex list of issues. How different is this from all the cases in which we have a waiver of appeal and we have upheld it? That is, is that really what you're arguing, or is your arguing that somehow district courts should now understand that crack and cocaine are the same thing, and that they should do that, even though Congress hasn't yet acted that way? Because if your argument is that the waiver is invalid, then any number of other waivers which we uphold are valid or would be invalid, and that's kind of dangerous for us to do. The other is an interesting argument, but it's a hard argument to make that courts should go where the government says it can go and where Congress may be going but doesn't go up yet. Two points on that, Your Honor. With regards to distinguishing this from other appeal waiver cases, if you look at page 32 of the record, this is towards the end of the court listing all those other criminal procedure rights. There's a comment by the court saying, by pleading guilty, you are giving up all the rights I mentioned, including the waiver of appeal. And that's not correct. It's not a forfeiture. That's an What's going on is that you have the ability to waive your right now that you've pleaded guilty. That's just one point, Judge. The other, as this Court knows, we apply contract principles to appeal waivers, and we interpret them against the drafter, which is, of course, the government. So when we address this type of principle, we always are constrained by public policy constraints. And that is my, I would say, my more substantive argument about the appeal waiver. When we're dealing with this particular issue of the crack powder disparity, that is something the court needs to consider in substance. But isn't that, I mean, this is, I guess, related to what Judge Calabresi was saying, that to the extent that your argument is that this waiver should be looked at in the context of the crack cocaine disparity and that the language, the way it's described, is very formalistic or what have you, it does still seem that that is something that would then mean that a waiver in any of these types of cases would be invalid, even though these kind of general statements of waiver have been frequently upheld. And, of course, the drug disparity would apply in many cases. If I could go at it this way, then, Your Honor, it's not just that there's a, it's not just about the disparity in general. What I'd ask the court to look at here that perhaps separates this from other cases is the nature of the discretion here. The typical big picture issue that district courts address under 3553A2, what is a just sentence, promoting respect for the law, et cetera, is normally not subject to numeric precision. This was necessary to eradicate a racial disparity. Now you're making an argument that somehow this sentence was substantively invalid. And I know many of us, I go back 30 years to arguing that crack and cocaine should be treated the same way. It was one of my first separate opinions on that which got, but I got ignored. And slowly we're coming to the point, but the point of saying that somehow a court that hasn't yet gotten, that goes some way but not all the way substantively, that would be very hard. Judge, I, of course, see your point. I understand it. Our point certainly has to be, though, that with regards to the court just hearing the case in substance, the crack disparity issue, we are asking to be an exception, as a public policy exception. We are asking for that. The one other parallel I would make for you, when a court addresses a restitution order, it has objective variables in front of it and there's less discretion in that regard. What happened here is the court reduced my client's sentence by 22 months beneath the accepted 70 to 87. In other words, in order to eradicate the disparity here, it would have had to have gone down 37 months to do it. So it eradicated 59% of the racial disparity in my client's sentence. I would submit to you that if your honors had a restitution order before you, where only 60% of the victims had gotten paid, you'd find it unreasonable. I would just ask you to consider it in that light. I see my time is up. I thank you. Thank you, Mr. Murphy. You have a couple of minutes for rebuttal. And now we'll hear from Ms. Gregory. Good morning. May it please the court, Catherine Gregory representing the United States. This court should enforce the appeal waiver provision and dismiss the appeal because Grant's plea was knowing and voluntary. And we know this for three reasons. Mr. Grant does not allege any Rule 11 error, let alone a plain error that affects his substantial rights. He confirmed on the record that he had discussed the appeal waiver provision with his attorney, with his federal defender, and that he understood it. And that's not just at the portion where the court went over broadly what rights he was giving up, but also on page 51 of the record where the district court specifically addressed the appeal waiver in detail and said, did you discuss your right to appeal and how pleading guilty affects that right with your lawyer? Yes, sir. And they go through a little bit of a back and forth about the parameters of that appeal waiver. So it was discussed both broadly, yes, but also specifically. And he said he had discussed it with his attorney and that he understood he was waiving his right to appeal. And then finally, the district court considered this public policy argument about the disparity. Both of the parties raised it. I believe it was referenced in both sentencing memoranda. And he said he was going to put it into his basket of considerations, did grant a variance downwards, far below the sentencing guidelines range of 70 to 87 months. So this really comes down to Mr. Grant being dissatisfied that the variance was not quite as large as he had hoped for, which goes to the substantive reasonableness of the sentence. But this court does not need to get there because the appeal waiver provision is enforceable and should be enforced in this case. So just to take, I think, directly on the argument is essentially it's unenforceable because it's violative of public policy in light of the disparity. So what's the response to that argument? I'm not quite sure that I see the cases that Mr. Grant cites regarding the public policy concerns really have nothing to do with the law seems unfair, that kind of argument. For example, Rosa, the waiver in that case applied even if the court went above the anticipated range. So really it didn't provide any benefit to him whatsoever. And in Reedy or Reddy, there was a very ambiguous restitution term. But you're saying that we are not able to say that today it is so obvious that the distinction between crack and cocaine is wrong that even a waiver based that allows that distinction is against public policy? You're telling us we can't say that? Not for the purposes of considering whether the appeal waiver is enforceable, no. The appeal waivers are presumptively enforceable. And again, in this case, the district court did consider it. Everyone raised it. They discussed it. The government advocated that we're against the disparity and this is what the range would be. But ultimately, the plea agreement that Mr. Grant and the government negotiated waived his right to appeal any sentence at or below 105 months. He received 48 months. It should be enforced in this case. If this court does reach the substantive reasonableness of the sentence, this still falls well within the district court's discretion. Again, this is not the exceptional case, the rare case where it is shockingly high for a criminal history category 5 defendant with his history with a pending robbery in state court when he was sentenced with- Well, shockingly high can be in two ways. It can be shockingly high because it is too high or it can be shockingly high because it makes a distinction that is an invalid distinction. We could be shocked by that. As I say, I was shocked by that 30 years ago but got overruled. Again, I would point out that the district court considered this and that both of the parties advocated that if the range reflected this hypothetical equal act, then that's what the range would be. But the district court would still have discretion to go above a guidelines range like that. It's possible, I suppose, on this record that the district court came all the way down to 1 to 1 and then in light of aggregating factors came up to 48 months. We can't exclude that possibility on this record. And you've articulated it better than I have, Your Honor, that even if the applicable guidelines, let's say hypothetically that the applicable guidelines range was 30 to 37 months, the district court would still be within its discretion to give a sentence of 48. To go to 48. To go to 48 months, that's correct, Your Honor. And again, it's not just the disparity in general that we're talking about, although again, it was raised by the parties. We also have to look at this specific defendant and why district courts have such broad discretion in sentencing. And that's why I raised criminal history category 5. He committed this offense while on parole. He had the pending state robbery charge. So it's not as if this was a first-time offense and the crack cocaine disparity resulted in a shockingly high 20-year maximum sentence. This was a reasoned sentencing process. The proper arguments were made. He knowingly and voluntarily waived his right to appeal anything less than 105 months, and he received a variance below the actual sentencing guidelines range. He got 48 months when the range was 70 to 87. Now, it's not automatically reasonable just because it's within or below the guidelines range. But again, this is not that rare case. In fact, our court in Caveira said in cases like this, keep out, let the district court do what it did. Essentially, Your Honor, yes. So while we would advocate that the court enforce the appeal waiver on the merits even, this was well within the district court's discretion to impose a 48-month sentence. And unless the court has further questions- Could I ask, I'm just curious, does your office take this position in all crack cases to advocate for the one-to-one as a sentencing variance? Your Honor, I believe that's a Department of Justice policy, but I can't say for sure. I would want to check before I would say on the record. It's good to see the office advocating for what Judge Calabresi saw long ago. It would be very nice. I mean, because you are the Department of Justice, not the Department of Public Prosecutions. That's correct, Your Honor. And at least speaking for myself, I can say that in my experience, we do try and do justice and do the right thing for the right reasons. But again, we ask that you affirm the judgment. Thank you. Thank you. Your Honor, just a couple points. On page 51 of the record, that is the actual allocution of the waiver itself. And to answer Judge Nathan's question, I do believe that the Western District's office, they do in every case. I do believe that's the case. I might be wrong. I don't think that's true in the Southern District. Is that right? Maybe I'm wrong, but in any event, I'm glad to see it. So on page 51, the court repeated the paragraph from the plea agreement, which was paragraph 22 of the plea agreement with regards to the waiver. I just want to point this out to you. My client is 22 years old or was 22, uneducated, under the pressures of a plea hearing. And what the court said was it was referring to paragraph 22, which referred back to paragraph 12A, which referred to the 105 months. You feel like a real estate attorney reading these things sometimes. It would make more sense when you had someone of this age with this kind of background to actually say 105 months to him. It's just one point. The other is about his criminal history. One of his convictions was in 2015. It was a drug conviction from when he was 16 years old. I would just point out to you that wouldn't be a conviction today in New York State, and he would not have had to have used his youthful offender adjudication. If he did not have those two points, that would have put him in Category 4. So this kind of is a segue back to Judge Nathan's question about whether the court went down to 1 to 1 and then went back up. If you look at page 4 of the Statement of Reasons, the court said, I am considering this, but I'm not considering. In fact, let me just give you this quick phrase. What's the appending site for that? It's not in there. It was a sealed document. It's a Statement of Reasons, but it was submitted with the probation report. The court says, the court did take that into consideration and granted a variance based on those circumstances, but not to the extent that was contemplated in the plea agreement. I just want to point that out to you. And the last point, I think Judge Calabresi started on in answer to my friend's comment about whether this is substantively unreasonable. Fifteen months too long, of course, it is our position that does damage the administration of justice when it's not proper. And I would just leave it at that, and I thank you. Thank you, Mr. Murphy. Thank you both. We'll take the case under advisement.